

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**PRESTON TURNER,**

        Petitioner,

v.                                                       CRIMINAL NO. 2:18-cr-128

**UNITED STATES OF AMERICA,**

        Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Preston Turner's ("Petitioner") Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 36.

### I. FACTUAL AND PROCEDURAL HISTORY

From August 2017 to November 2017, a law enforcement task force was investigating activity on the eMule network, a hotbed for the transmission of child pornography. During the investigation, a computer containing Petitioner's IP address received images of child pornography. On February 2, 2018, law enforcement executed a search warrant at Petitioner's residence and seized his computers and electronic media. The subsequent investigation of Petitioner's devices revealed 76,283 images of child pornography.

On August 8, 2018, Petitioner was named in a 13 count Indictment. ECF No. 1. On October 18, 2018, Petitioner pleaded guilty to Count 1, Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(1)(2)(A). ECF Nos. 17–19. On January 22, 2019, Petitioner was sentenced to a term of 112 months in the custody of the Bureau of Prisons. ECF Nos. 31–35.

Petitioner, through counsel, filed a Motion for Compassionate Release on April 7, 2020. ECF No. 36. The Government responded in opposition on April 8, 2020. ECF No. 37. Petitioner

replied on April 14, 2020. ECF No. 38. Petitioner filed a consent Motion for Leave to Supplement the original Motion on June 16, 2020. ECF No. 39. The Court granted Petitioner's Motion for Leave to Supplement on July 1, 2020 and ordered Petitioner to submit his supplemental briefing within 20 days. ECF No. 40. Petitioner filed his supplemental memorandum and sealed exhibit on July 22, 2020. ECF Nos. 41–43. This matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.*; *see also Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the

2

passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. Therefore, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Issue

This Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020). Because Petitioner seeks compassionate release based on his proffered vulnerability to COVID-19, the Court waives the exhaustion requirement in this case. *See Poulios v. United States*, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (finding that the exhaustion requirement may be waived for futility); *Coleman*, 2020 WL 3039123, at *3 (noting that the Bureau of Prisons criteria for home confinement excludes individuals convicted of sex offenses).

### B. Resolution of the Defendant's Request for Compassionate Release

*1. Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In reevaluating the § 3553(a) factors, the record shows that Petitioner has contracted COVID-19 and fought off the virus, despite his history of poor health. ECF No. 43 at 1–6 (showing that Petitioner tested positive for COVID-19 on May 23, 2020 and negative for COVID-19 on June 7, 2020 and June 8, 2020). Petitioner's offense conduct remains extremely serious, as reflected by his sentence. Petitioner's extensive cache of child pornography included sadistic and violent images. *See* ECF No. 24 at ¶ 9.4. Further, Petitioner's pattern of disturbing behavior extends far beyond simply viewing child pornography. *Id.* at ¶¶ 6, 8 (documenting Petitioner's interest in child molestation and discussion of that interest with others on the internet). This implicates the need for just punishment and specific deterrence. 18 U.S.C. § 3553(a)(2)(A)–(B). Most importantly, the Court is concerned with protecting against future instances of child exploitation by Petitioner. *Id.* § 3553(a)(2)(C). This remains a serious concern

in light of Petitioner's lack of sex offender treatment, as ordered by the Court in the original criminal judgment. ECF No. 36 at 3; *see* 18 U.S.C. § 3553(a)(2)(D) (listing the need for correctional treatment as a sentencing factor).

  *2. Evaluation of "Extraordinary and Compelling Reason"*

  In examining whether there exists an "extraordinary and compelling reason" for release, the Court considers the "growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020 (documenting the "unacceptable" percentage of positive tests at FCI Elkton, the BOP's "ineffective[ness]…at stopping the spread," and "minimal effort to get at-risk inmates out of harm's way"). Despite the Government's repeated assurances that the BOP has implemented plans to effectively combat the virus, Petitioner was not isolated when he first displayed symptoms of COVID-19. ECF No. 41 at 2–3. Not coincidentally, FMC Butner Low has several hundred confirmed active cases of COVID-19. Later, Petitioner was denied his medication on June 9, 2020 because BOP staff did not have proper Personal Protective Equipment. ECF No. 43 at 10. By this time, Petitioner had tested negative for COVID-19 twice on June 7, 2020 and June 8, 2020. ECF No. 43 at 5, 6. In other words, Petitioner's COVID-19 symptoms were ignored when he was sick and contagious, but then he was denied medical care and kept in solitary confinement *after* his infection had subsided. Worse yet, Petitioner's medical record contains evidence that he may face lasting consequences from his COVID-19 infection. *Id.* at 1 (documenting Petitioner's medical encounter on June 15, 2020, in which he complained of severe chest and back pain that worsens while walking after two negative COVID-19 tests).

The foregoing facts reemphasize concerns regarding the spread of COVID-19 within BOP facilities and the BOP's mismanagement of its population during the pandemic.

On the other hand, the Court is advised against grants of compassionate release when the petitioner is a danger to the safety of any person or to the community. U.S.S.G. § 1B1.13(2); *see also Dinning v. United States*, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (denying compassionate release because the petitioner "poses an ongoing danger to the community" based on his stated desire to return to the same positions of trust that facilitated his offense). Relatedly, federal courts have been disinclined to grant compassionate release to petitioners convicted of crimes involving child pornography, even for vulnerable petitioners during the COVID-19 pandemic, citing potential dangerousness. *See e.g. United States v. Mitchell*, 2020 WL 2770070, at *4 (E.D. Cal. May 28, 2020) (denying compassionate release because of the petitioner's lack of rehabilitation and the absence of a detailed plan to prevent reoffending) *citing United States v. Feiling*, 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) (denying motion for compassionate release in part because the petitioner committed his offense while at home and wanted to return home to finish his sentence); *United States v. Meizin*, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying a motion for compassionate release because of the easy access to electronic devices that would allow the petitioner to reoffend); *United States v. Hylander*, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying a motion for compassionate release because the petitioner wanted to return to the location of his offense upon release). However, regardless of the offense at issue, a sentence should not unnecessarily "include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic." *United States v. Zukerman*, 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) *quoting United States v. Rodriguez*, 2020 WL 1627331, at *12 (Apr. 1, 2020). Accordingly, the Court finds that while offense

conduct may inform the Court's discretion in deciding a motion for compassionate release and determining the appropriate conditions of release, such a motion may not be denied simply because of the underlying offenses.

Based on the foregoing, the Court determines that Petitioner has not presented an "extraordinary and compelling reason" for compassionate release, as the record presents an unacceptable risk of a subsequent offense. Under the circumstances, a generalized recitation of supervision conditions for sex offenders is no substitute for a release plan that proactively addresses the risk of a subsequent offense. *Contra* ECF No. 36 at 23–24 (arguing that Petitioner would not be a danger to society based on his physical condition, conditions of supervised release, and release plan). Notwithstanding his contentions, Petitioner was in poor health at the time he came under federal investigation and he expressed that he might inflict sexual abuse on children if his health was better. ECF No. 24 at ¶¶ 6.4, 8. There is also no evidence that Petitioner has participated in rehabilitative programming specific to his offenses of conviction. *See Mitchell*, 2020 WL 2770070, at *4 ("Absent any evidence supporting defendant's rehabilitation or a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending from his home where he requests placement, defendant has not met his burden to show releasing him to home confinement will not pose a danger to the public"). Similarly, the Court does not have confidence that Petitioner's release would provide the community with adequate protection against the potential for a subsequent offense.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
July 30, 2020

/s/
Raymond A. Jackson
United States District Judge